Sungkyun Kim
skim@yuyoollaw.com
**Yuyool Law LLC**
401 Park Ave S Suite 1050
New York, NY  10016
P: (201) 973-1828
*Attorney for Plaintiff Yoons T&C*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

— — — — — — — — — — — — — — — — — — — — — — X

| | |
|---|---|
| Yoons T&C, : | |
| Plaintiff, : | Civil Action No.: 2:24-cv-00198 |
| : | |
| against : | *Electronically Filed* |
| : | |
| : | **COMPLAINT,** |
| Young Kim, individually, and CareOx LLC, : | **JURY DEMAND, and LOCAL** |
| Defendants. : | **RULE 11.2 CERTIFICATION** |
| : | |

— — — — — — — — — — — — — — — — — — — — — — X

Yoons T&C ("Yoons", or "Plaintiff"), by and through its attorney, Yuyool Law LLC, for its Complaint against CareOx LLC ("CareOx") and Young Kim ("Mr. Kim") (collectively, "Defendants"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

### PARTIES

1.      Yoons is a private corporation incorporated in South Korea in August 2019, and its principal place of business is 107-2003, 30, LS-ro 45beon-gil, Dongan-

gu, Anyang-si Gyeonggi-do, Republic of Korea. Defendant CareOx is a limited liability company formed in November 2018 under the laws of New Jersey. Its principal place of business is 103 Carnegie Center Suite 300, Princeton, NJ 08540. The street and post office address of Defendant Mr. Kim is 117 Federal Court, Unit 1, Princeton, NJ 08540.

### A.   Description of Plaintiff

2.     Yoons is a one-person company. Its principal, Heejung Roh, manages Yoons. Guihoon Chung ("Mr. Chung"), an electrical engineer and the husband of Heejung Roh ("Ms. Roh"), frequently works for Yoons as an agent.

3.     Yoons primarily engages in the development and wholesale of electrical machinery and related materials.

4.     The company's highest annual revenue was KRW 58,990,999 (about USD 44,700) in 2020. It generated no revenue in 2023.

### B.   Description of Defendants

5.     As of January 10, 2024, CareOx has two (2) members: Mr. Kim and Spirowells Corp ("Spirowells"), another New Jersey company where Mr. Kim is listed as its sole principal. Spirowells was established on December 16, 2021. Upon information and belief, Spirowells is a paper company and the total value of its stocks is significantly less than $136,685. The home page of its website, https://spirowells.com, still displays the oxygen analyzers that Yoons had been developing in 2022. A copy of which is attached hereto as part of Exhibit A.

The other website pages are blank, copies of which are attached hereto as part of Exhibit A.

6.     Upon information and belief, CareOx LLC primarily engages in the medical equipment and supplies business.

7.     Upon information and belief, CareOx is estimated to generate approximately $468,049 in annual revenue and employs approximately four people. A correct and true copy of CareOx's business profile from Buzzfile is attached hereto as Exhibit B.

8.     Defendant Mr. Kim was born in South Korea and, upon information and belief, is a naturalized U.S. citizen who resides and is domiciled in Princeton, New Jersey.

9.     Upon information and belief, at all times herein relevant, Defendant Mr. Kim owned, controlled, dominated, managed, and operated Co-Defendant CareOx.

## <u>NATURE OF THE CASE</u>

10.     This litigation arises from Defendants' misrepresentations and false promises. Induced by Defendants' misrepresentations and false promises, Yoons purchased goods for $136,685, but Defendants have never shipped the promised goods. About nine months later, while not returning the $136,685 payment Yoons made, Defendants attempted to sell its goods again for $57,685, trying to induce

3

Yoons to enter into this transaction by making misrepresentations and a false promise.

11.     As alleged below, Defendants had been developing a fraudulent scheme to gain profits from Mr. Chung and Yoons while contacting and meeting with Mr. Chung and purporting to work with Yoons to develop an oxygen analyzer.

## PROCEDURAL MATTERS

**A.     Jurisdiction**

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), in that this is a civil action between citizens of New Jersey and a citizen of South Korea, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     This Court also has federal question jurisdiction over this dispute pursuant to 28 U.S.C. § 1331, in that Yoons's claims arise under the United Nations Convention on Contracts for the International Sale of Goods ("CISG"), an international treaty to which both the United States and South Korea are signatory members. The CISG applies to commercial contracts for the sale of goods between parties whose places of business are in different signatory nations. Yoons and Defendants are both merchants dealing in the sale of goods by engaging in cross-border international transactions. Both Plaintiff and Defendants had not included any opt-out language in the sales contract at issue in this dispute.

14.     The Court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1337, in that Yoons's other claims are so related to the claims to the action within such original jurisdiction that they form part of the same case or controversy (Ref. §1337(a)), and the exercise of such supplemental jurisdiction over such claims would not be inconsistent with the jurisdictional requirements of § 1332 (Ref. §1337(b)).

**B.     Venue**

15.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that CareOx LLC and Mr. Kim reside in this district and all Defendants reside in New Jersey.

## FACTS

**A.     In October 2021, Mr. Kim and Mr. Chung met for the first time and one of his representations about CareOx was proved to be true**

16.     In October 2021, when Mr. Chung was working as an employee of Bistos Co. ("Bistos"), a public company that primarily develops and manufactures incubators for newborn babies, the oxygen sensors that the company had been using caused many issues. As any malfunction of oxygen sensors can be fatal to a newborn, Mr. Chung was looking for a better oxygen sensor.

17.     One of the companies he contacted for oxygen sensors was CareOx. Mr. Kim made representations that CareOx was manufacturing an oxygen sensor, that CareOx was supplying this oxygen sensor to Atom Medical, a Japanese medical

equipment corporation, and that CareOx's trademark does not appear on this oxygen sensor because it supplied the products as an original equipment manufacturer.

18. Mr. Kim made further representations that CareOx is the major supplier of oxygen sensors to Hamilton Medical, a U.S. medical device manufacturer for mechanical ventilators, and that CareOx had supplied about 300,000 oxygen sensors to MEKICS, a South Korean public company that manufactures mechanical ventilators. MEKICS generated approximately $51 million in annual revenue in 2020.

19. At the time, Mr. Kim's above representations appeared plausible. Although Mr. Chung did not have the means to verify all other representations, Mr. Chung was able to verify Mr. Kim's representation that CareOx was supplying about 300,000 oxygen sensors to MEKICS; he verified this representation when Bistos's CEO was on a phone call with MEKICS's CEO. Also, the 50 oxygen sensors Bistos ordered from CareOx for testing showed excellent performance.

**B.     Mr. Kim falsely presented himself as the president of a big U.S. company and induced Yoons to develop an oxygen analyzer by making false promises**

20. Since October 2021, Mr. Chung had contacted Mr. Kim about purchasing the oxygen sensor and sometimes met him in person when Mr. Kim visited South Korea.

21.     When Mr. Chung contacted or met with Mr. Kim from October 2021 to March 2022, Mr. Kim falsely presented himself as the president of a large company and a successful businessman. In particular, Mr. Kim made false representations regarding information about his business to Yoons that CareOx's annual revenue is KRW 400,000,000,000 (about USD 306,500,000), that the valuation for CareOx is about KRW 5,000,000,000,000 (about USD 3,831,300,000), that CareOx is larger than Maxtec, a U.S. manufacturer of oxygen analysis and delivery products, and that CareOx has more than 120 employees.

22.     On March 21, 2022, Mr. Chung met with Mr. Kim in person, and Mr. Kim told Mr. Chung that he plans to develop an oxygen analyzer and orally represented that he would give Mr. Chung an opportunity to earn an allowance. Based on Mr. Kim's previous oral representations regarding his business, Yoons was induced to believe Mr. Kim's promise and accepted the request.

23.     On March 24, 2022, Mr. Kim, Mr. Chung, and Seonyoung Lee, a mechanical design engineer, discussed the initial plan. The initial plan for the development was quite simple. Seonyoung Lee would design an enclosure, and Yoons would assemble the enclosure, oxygen analyzer PCB board, and LCD display panel, both of which were planned to be supplied by CareOx.

24.     On April 1, 2022, Mr. Kim orally induced Yoons to purchase 3,000 oxygen analyzer PCB boards and 3,000 LCD display panels in advance; the total amount of the expected payment for the parts was about $150,000. Mr. Kim orally

promised Mr. Chung that he would give Mr. Chung a comparable value of Spirowells stocks as a pledge and the interest generated from the deposit. They also discussed these via text messages.

    **C.**    **In reliance on Mr. Kim's representations about his company and the two promises Mr. Kim made, Yoons made a payment of $136,685 for the parts; soon after the payment was made to CareOx, Mr. Kim suddenly changed the development plan, excluding the parts Yoons ordered from the development and never shipped the promised goods**

25.    On April 4, 2022, Mr. Kim sent Yoons a proforma invoice as a quote for the oxygen analyzer PCB boards and LCD display panels. The proforma invoice included the description of products, the quantity, the unit price of each product, and the total cost of all products. The correct and true copy of the proforma invoice is attached hereto as Exhibit C.

26.    On April 5, Yoons sent Mr. Kim a purchase order, which mirrors the proforma invoice exactly. The descriptions of the products, the quantities, and the prices of the purchase order exactly match the proforma invoice. The correct and true copy of the purchase order is attached hereto as Exhibit D.

27.    On April 11, 2022, in accordance with this sales contract, Yoons paid a total of $136,685 for the PCB boards and LCD display panels. The correct and true copy of the wire transfer receipt is attached hereto as Exhibit E. Under the initial development plan, the promised goods should have been shipped before June 2022.

28.     Since April 11, 2022, Mr. Kim never mentioned anything related to the interest or Spirowells's stocks.

29.     On April 13, he asked Mr. Chung in writing to review another oxygen analyzer PCB board, Ultrasonic Oxygen Sensor, suggesting the potential replacement of the PCB board that Yoons ordered on April 5, 2022.

30.     On April 15, 2022, Mr. Kim excluded the parts Yoons ordered from the oxygen analyzer development by sending Mr. Chung an email in which Mr. Kim informed Mr. Chung that CareOx's engineers strongly oppose using the PCB boards and the LCD display panel. Also, during a phone call with Mr. Chung, Mr. Kim directed Yoons to develop an oxygen analyzer PCB board and an LCD screen.

31.     None of the promised goods had been shipped and were never delivered.

**D.     Mr. Kim attempted to sell his products again to Yoons while still keeping the $136,685 payment Yoons made; right after Yoons rejected Mr. Kim's offer, Mr. Kim canceled the entire oxygen analyzer development**

32.     Yoons promptly undertook the development under the new plan.

33.     CareOx hired a product designer and a mechanical design engineer as independent contractors. Although Mr. Kim paid the product designer the design fees for Spirowells' logo and LCD screen, he did not pay the design fees for the product design. Also, the mechanical design engineer revised the design about four times at Mr. Kim's request but never received the fees for the design revisions.

34.     While developing the oxygen analyzer PCB board and the LCD screen, Yoons and other independent contractors responded to Mr. Kim's requests promptly and fully incorporated such requests into the development.

35.     Mr. Kim appeared to be preparing to establish CareOx's subsidiary, CareOx Asia, in South Korea. Mr. Kim told Mr. Chung that Mr. Kim's plan to establish the subsidiary had been delayed since the U.S. Department of Treasury had not approved wire transfers. In December 2022, he orally asked Mr. Chung to establish the subsidiary, as it would be problematic if setting up the subsidiary was kept delayed. Mr. Kim orally promised Mr. Chung that he would become its principal and that Mr. Kim would buy back CareOx Asia once the U.S. Department of Treasury approves the wire transfer.

36.     Mr. Chung accepted this request. On December 31, Mr. Chung resigned from Biscos to work for CareOx. In January 2023, Mr. Chung performed several tests for the oxygen analyzer. However, CareOx has never paid Mr. Chung for the work he had done for CareOx in January 2023. Nor did Mr. Kim mention anything related to establishing the subsidiary after Mr. Chung quit his job, except that Mr. Kim sent a trademark registration company an email, where Mr. Chung was carbon copied, to request an update regarding CareOx's application for trademark registration in South Korea.

37.     As Mr. Kim has not returned the $136,685 payment and Mr. Chung resigned from his job, Mr. Chung was under significant financial pressure in January

2023. At the beginning of January, despite his knowledge about Mr. Chung's financial situation, Mr. Kim offered Yoons to purchase oxygen analyzers and oxygen monitors from CareOx, the total cost of which amounts to $57,685, including $85 of handling charges. This oxygen analyzer is a different type of oxygen analyzer from the one Yoons had been developing.

38.     Mr. Kim induced Yoons to buy these goods by orally representing that he had already received preorders, which amounts to KRW 30,000,000 (approximately USD 22,7000), that many people in South Korea want CareOx's products, and that he would give Yoons 20% of the profits. In reliance on these representations, Yoons sent a purchase order on January 11, 2023. On January 28, 2023, Yoons canceled its purchase order due to financial pressure. On the same day, Mr. Kim agreed to cancel the purchase order and also canceled the entire oxygen analyzer development without providing any explanation.

39.     On February 21, 2023, Mr. Chung canceled the April 5, 2022 purchase order.

40.     Between February 21, 2023, and February 24, 2023, Mr. Kim threatened Mr. Chung that he would sue Mr. Chung and/or Yoons for the alleged damages for the alleged delay in developing the oxygen analyzer.

41.     On March 7, 2023, Mr. Kim orally asked Yoons again to purchase the same amount of oxygen analyzers and oxygen monitors. On March 9, 2023, Yoons provided a counteroffer that it would take over the preordered products from Mr.

Kim, deliver them to the customers, receive the customers' payments, and send the payments to Mr. Kim by the next day at the latest. Mr. Kim rejected this counteroffer and continued to threaten Mr. Chung that he would sue Mr. Chung and/or Yoons, stating that he was preparing a lawsuit against Mr. Chung and/or Yoons.

**E.     Despite Yoons's cancellation of the purchase order dated April 5, 2022 and its repeated request to return the $136,685 payment, Mr. Kim refuses to return the payment to this day, falsely representing Mr. Chung that he has been sued in court in the United States**

42.     Since the oxygen analyzer development plan had been canceled, Yoons repeatedly requested Mr. Kim a refund of the $136,685 payment Yoons made on April 11, 2022.

43.     Mr. Kim, however, constantly refused to refund the payment, alleging that he had sued Mr. Chung and/or Yoons in court in the United States and that Mr. Chung must appear in court. For example, on June 18, 2023, Mr. Kim stated that he already sued Mr. Chung and/or Yoons for damage compensation and that Mr. Chung must appear in court around October 2023.

44.     Neither Mr. Chung nor Yoons has been sued by CareOx or Mr. Kim in court in the United States.

**F.     Yoons suffered actual economic harm and actual damages**

45.     As a direct result of the foregoing facts and circumstances, Yoons suffered economic harm and actual damages in an amount not less than $136,685, calculated as follows:

a. The payment made to CareOx and Mr. Kim in the amount of $136,685 for the purchase of 3,000 each of the oxygen analyzer PCB board and LCD display panel; none of which were ever shipped by Defendants; and

b. The payment made to MIND on behalf of CareOx in the amount of KRW 1,000,000 (approximately USD 760). On December 14, 2022, Mr. Kim wire transferred the mockup fee to the wrong account number. On February 23, 2023, he was informed that the last digit of the account number that was previously known to him was missing, but he refused to transfer the fee again.

46. Yoons generated no revenue in 2023 due to financial pressure caused by Defendants' refusal to refund the $136,685 payment and Mr. Chung and Ms. Roh's loss of trust in interpersonal relationships.

## COUNT I

### VIOLATION OF THE CISG
(As against CareOx LLC and Young Kim)

47. Yoons repeats and realleges paragraphs 1 through 46 hereof, as if fully set forth herein.

48. This claim is brought under the United Nations Convention on Contracts for the International Sale of Goods ("CISG"). Both the United States and South Korea are signatories of the CISG.

13

49.     Mr. Kim, through CareOx, entered into a valid, enforceable, and binding sales contract with Yoons involving the purchase and delivery of the above-referenced oxygen analyzer sensors and LCD display panels. On April 4, 2022, Defendant sent Yoons a proforma invoice as a quote. On April 5, 2022, Yoons sent Defendant a purchase order that exactly mirrors the kind of goods, the quantity, and the price of the proforma invoice.

50.     Under this sales contract, Yoons agreed to make a payment of $136,685, and in exchange, Defendant agreed to ship 3,000 each of oxygen analyzer PCB boards and LCD display panels.

51.     On April 11, 2022, Yoons fully fulfilled its contract obligation by paying Defendants $136,685 for the parts.

52.     Defendants never performed their obligation under the sales contract. Defendants never delivered the oxygen analyzer PCB boards and LCD display panels.

53.     Two days after receiving the payment from Yoons, Defendants effectively refused to ship the promised goods by excluding these parts from the oxygen analyzer development plan and thereby materially breached the sales contract.

54.     Yoons suffered significant damages in the amount of $136,685 as a result of Defendants' nonperformance. Defendants refused to refund any portion of the payment Yoons made, despite Yoons's repeated requests.

WHEREFORE, Yoons respectfully requests that the Court enter judgment in its favor and against Defendants for breach of contract and award Yoons damages, including punitive, consequential, and incidental damages plus interest, attorneys' fees, costs, and such other relief as this Court deems just and appropriate.

## COUNT 2

### Fraudulent Inducement
(As against CareOx LLC and Young Kim)

55. Yoons repeats and realleges paragraphs 1 through 54 hereof, as if fully set forth herein.

56. On March 21, 2023, Mr. Kim, individually and in the name of CareOx, induced Yoons to make a payment of $136,685 for the oxygen analyzer PCB board and the LCD display panels by making false promises to Yoons that he would provide him Spirowells stocks as a pledge and interests generated from the payment.

57. Receiving the interest and comparable value of stocks as a pledge was material to Yoons' decision to enter into the sales contract.

58. The promises were knowingly false. Upon information and belief, Spirowells is a paper company. Young Kim is the principal of Spirowells and thus knew that the total value of its stocks is significantly less than $136,685.

59. Defendants' promises were made with the intent to defraud Yoons and were made with the sole intent of inducing Yoons to pay for the parts for which

Defendants had no intention of delivering. After Yoons made the $136,685 payment, Defendants never mentioned the interest and the stock grant as a pledge, nor did Defendants deliver the promised goods. Mr. Chung requested a refund repeatedly, but Defendants refused to return the payment.

60.     Yoons reasonably relied on Defendants' promises to its detriment and transferred $136,685 to Defendants. But for the aforementioned false promises, Yoons would not make the payment.

61.     As a result of the aforementioned false promises, Yoons was fraudulently induced to make the payment for the goods.

62.     As a result of its reasonable reliance on Defendants' knowingly false promises, Yoons suffered substantial monetary damages.

WHEREFORE, Yoons respectfully requests that the Court enter judgment in its favor and against Defendants for fraudulent inducement and award Yoons damages, including punitive, consequential, and incidental damages, plus interest, costs, and such other relief as this Court deems just and appropriate.

## **COUNT 3**

### **Fraudulent Misrepresentation**
(As against CareOx LLC and Young Kim)

63.     Yoons repeats and realleges paragraphs 1 through 62 hereof, as if fully set forth herein.

64.     Between October 2021 and March 21, 2023, Mr. Kim, individually and in the name of CareOx, made representations to Yoons about CareOx's annual revenue, number of employees, and valuation to make him appear as a successful businessman and an owner of a big company.

65.     Specifically, Mr. Kim, individually and in the name of CareOx, made false representations that CareOx's annual revenue is KRW 400,000,000,000 (about USD 306,500,000), that the valuation for CareOx is about KRW 5,000,000,000,000 (about USD 3,831,300,000), that CareOx is larger than Maxtec, a U.S. manufacturer of oxygen analysis and delivery products, and that CareOx has more than 120 employees.

66.     Also, on March 21, 2022, Defendants made representations regarding their existing intention to Yoons that they plan to develop an oxygen analyzer and that they will give Yoons an opportunity to earn an allowance.

67.     Defendants' representations regarding their business were false and misleading. Upon information and belief, CareOx is estimated to generate $468,049 in annual revenues and employs approximately four people.

68.     Defendants' other representations were also false and misleading, as Defendants never fulfilled the promises.

69.     The size and needs of a potential company client were material to Yoons in determining a choice of action.

70.     Defendants knew that the representations and the promises were false at the time they made it. Defendants knew well about its revenue, number of employees, and valuation. Upon information and belief, CareOx is estimated to generate $468,049 in annual revenues and employs approximately four people.

71.     Also, Defendants had no intention at the time they made the promises. In particular, soon after receiving the $136,685 payment from Yoons, Defendants suddenly changed the oxygen analyzer development plan, excluding the purchased parts from the development plan and refused to return the $136,685 payment; Defendants were reluctant to pay the necessary fees, such as product design fee, while the development was ongoing; upon information and belief, Spirowells is a paper company; and when Yoons and Defendants agreed to cancel the purchase order dated January 11, 2023, Defendants immediately canceled the oxygen analyzer development plan in its entirety.

72.     Yoons actually relied to its detriment on Defendants' misrepresentations and false promises.

73.     Yoons's reliance on Mr. Kim's misrepresentations was both reasonable and justifiable because the falsity was not obvious to Yoons. Specifically, CareOx was, in fact, supplying 300,000 oxygen sensors to MEKICS, whose annual revenue

reached approximately $51 million in 2020 and the oxygen sensor Bistos ordered from CareOx showed excellent performance.

74.    As a result of relying on Mr. Kim's misrepresentation, Yoons suffered economic harm and other damage and detriment in an amount to be proven at trial not less than $136,685. Purchasing the PCB boards and LCD display panels Yoons ordered on April 5, 2022, was a part of the oxygen analyzer development.

WHEREFORE, Yoons respectfully requests that the Court enter judgment in its favor and against Defendants for fraudulent misrepresentation and award Yoons damages, including punitive, consequential, and incidental damages, plus interest, costs, and such other relief as this Court deems just and appropriate.

## COUNT 4

### Violation of New Jersey Consumer Fraud Act
(As against CareOx LLC and Young Kim)

75.    Yoons repeats and realleges paragraphs 1 through 74 hereof, as if fully set forth herein.

76.    This claim is brought under N.J.S.A. § 56:8–1, *et seq*.

77.    On April 1, 2022, Defendants orally promised Mr. Chung that, if he makes the payment of $136,685 for the oxygen analyzer PCB boards and the LCD display panels, they would provide Spirowells stocks as a pledge, the value of which was purported to be $136,685, and the interest generated from the deposit. Mr. Kim also mentioned these in his text messages to Mr. Chung.

78.     On April 11, 2022, Yoons paid $136,685 in accordance with the sales contract. Defendants never fulfilled their promise to provide stocks as a pledge and the interest, nor did they fulfill their promise to deliver the parts. Despite Yoons's repeated requests for a refund, Defendants refused to return the money.

79.     The Defendants' promises to offer Spirowells stocks as a pledge and give the interest generated from the deposit were the major factors that caused Mr. Chung to decide to enter into the sales contract. But for the aforementioned promises, Yoons would not have made the $136,685 payment.

WHEREFORE, Yoons respectfully requests that the Court enter judgment in its favor and against Defendants for violation of the New Jersey Consumer Fraud Act and award Yoons damages, including treble, consequential, and incidental damages, plus attorney's fees, interest, costs, and such other relief as this Court seems just and appropriate.

## **COUNT 5**

### **Unjust Enrichment**
(As against CareOx LLC and Young Kim)

80.     Yoons repeats and realleges paragraphs 1 through 79 hereof, as if fully set forth herein.

81.     Yoons alleges in the alternative to its breach of contract claim, that Yoons is entitled to recover under the doctrine of unjust enrichment if it is

determined that either a valid and enforceable contract does not exist or the existing contract is void, invalid, or unenforceable.

82.     On or about April 11, 2022, Yoons wire transferred $136,685 to CareOx in payment for 3,000 oxygen analyzer PCB boards and 3000 LCD display panels.

83.     Defendants received the $136,685 payment made by Yoons for the PCB boards and LCD display panels but never delivered the parts and refused to return any portion of the $136,685 payments.

84.     Under these circumstances, Defendants' retention of the $136,685 payments made by Yoons and refusal to return any portion of the payments was unjust, inequitable, and unconscionable.

WHEREFORE, Yoons respectfully requests that the Court enter judgment in its favor and against Defendants for unjust enrichment and award Yoons damages, including punitive, consequential, and incidental damages, plus interest, costs, and such other relief as this Court deems just and appropriate.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Yoons respectfully requests that the Court:

A.      Award Yoons damages consisting of compensatory, consequential, and

incidental damages;

B.      Award Yoons punitive damages;

C.      Award Yoons treble damages pursuant to the New Jersey Consumer

Fraud Act;

D.      Award Yoons attorney's fees, interest, and costs of suit; and

E.      Award Yoons such other and further relief as the Court deems just and

appropriate.


Dated: January 11, 2024                 Respectfully submitted,

                                        By: /s Sungkyun Kim
                                        Sungkyun Kim
                                        skim@yuyoollaw.com
                                        **Yuyool Law LLC**
                                        401 Park Ave S Suite 1050
                                        New York, NY  10016
                                        P: (201) 973-1828
                                        *Attorney for Plaintiff Yoons T&C*

## <u>REQUEST FOR TRIAL BY JURY</u>

Yoons T&C hereby requests a trial by jury on all counts.


Dated: January 11, 2024     Respectfully submitted,

             By: /s Sungkyun Kim
             Sungkyun Kim
             skim@yuyoollaw.com
             **Yuyool Law LLC**
             401 Park Ave S Suite 1050
             New York, NY  10016
             P: (201) 973-1828
             *Attorney for Plaintiff Yoons T&C*

## <u>LOCAL RULE 11.2 CERTIFICATION</u>

Pursuant to Local Rule 11.2, the undersigned hereby certifies that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.


Dated: January 11, 2024

By: /s Sungkyun Kim
Sungkyun Kim
skim@yuyoollaw.com
**Yuyool Law LLC**
401 Park Ave S Suite 1050
New York, NY  10016
P: (201) 973-1828
*Attorney for Plaintiff Yoons T&C*

.